STATE OF NEBRASKA, APPELLEE, V. RUSSELL REDDEN, APPELLANT.

149 N. W. 2d 98

Filed March 3, 1967. No. 36394.

Thomas P. Lott, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

NEWTON, J.

Defendant, on trial to a jury, was convicted of breaking and entering a filling station. The proprietor of the station testified that the evening before he had closed and locked the station and that the doors and windows were then intact. The following morning the police requested him to appear at the station at which

time he found a large window had been broken in one of the doors of sufficient size to permit entrance by the defendant or an accomplice. He also made keys and had a number of them lying around inside the station. There was a wall safe in the station with a key lock. A key had been inserted in the lock and broken off so that part of it remained in the lock and part of it was lying on the floor. The only thing taken was a defaced coin from the cash register, all other money being in the wall safe to which entrance was not gained.

Two accomplices of the defendant testified at his trial. One, Sam Pittman, stated that he had met the defendant and David James Klimuik late the night before or early on the morning that the station was entered. About 5 o'clock a.m. they drove to the corner of Seventeenth and Vinton Streets in Omaha in an automobile operated by the defendant, got out, and walked to the station at Sixteenth and Vinton Streets. As they walked towards the station, either the defendant or David James Klimuik was carrying a tire iron taken from the automobile. He did not recall hearing any particular conversation about what they were to do at the station, but he knew they were going there for the purpose of "breaking and entering" and to take property in the station. He stayed around the corner from the station and heard glass breaking in front of the station, having been told by the defendant and David James Klimuik to remain there to inform them if he saw "cops or anything." Soon after he heard the glass break, he saw police officers and proceeded to run away, but was apprehended in company with the defendant at the corner of Seventeenth and Vinton Streets. He further stated that he was well acquainted with both the defendant and Klimuik. The defendant and Klimuik had not met until the preceding evening.

The witness, David James Klimuik, testified about meeting the defendant and Sam Pittman during the late hours of the preceding day and the early morning

hours of the day on which the offense occurred. The defendant had taken a tire iron from a car which the defendant carried with him as the three walked to the station. On arriving at the station, the defendant broke out the window and the witness, Klimuik, climbed through the window to the interior of the station and looked around for money or other property of interest. He did not find anything but noticed the wall safe and went back to the door to talk to the defendant who was standing on the outside, adjacent to the door. The defendant told him to look for a key and try to open the safe. The witness found a key but on trying it in the lock of the safe, the key broke and he dropped part of it on the floor. They then saw the police and proceeded to run, the witness taking a different direction than that taken by the defendant and Pittman but being likewise apprehended. He further stated that the defendant never entered the station and that the only money found was a defaced nickel which was found on the witness Klimuik at the time of his arrest. He further stated that he was wearing a white jacket at the time in question and that the defendant and Sam Pittman were wearing dark jackets.

John M. LeHoyutak, a police officer, was called and stated that he was in a cruiser on the morning in question operated by another policeman. They were in the vicinity of the station at Sixteenth and Vinton Streets at about 5 o'clock a.m. when they saw a party to the west of the station and two who appeared to be inside the middle door of the station. He identified the first as Sam Pittman and stated that he saw the defendant run from the front of the station and kept the defendant in sight until defendant and Pittman were arrested at Seventeeth and Vinton Streets. Defendant and Pittman were dressed in black jackets and Klimuik in a white jacket. On further investigation he ascertained that the window in the east bay door of the station had been broken, but no tire iron was found.

The defendant also testified and told substantially the same story as Pittman and Klimuik about meeting earlier, driving in an automobile to the vicinity of the gas station, and as to the three of them walking to the station; and admitted there had been some conversation in a pool hall earlier in the evening about breaking into the station. Defendant also testified that he was on the station property within 5 or 6 feet of the building, but stated that when he heard the glass crack, he turned to walk away. He said he did not see a tire iron and that he had persistently informed Pittman and Klimuik that he did not want anything to do with breaking into the station.

The defendant's principal assignment of error is that the evidence is not sufficient to sustain the verdict of the jury. It would clearly appear that the evidence above outlined is ample to justify a submission of this case to the jury. The evidence of the defendant's accomplices definitely involves him in the planning and execution of the offense, and the independent evidence of the arresting officer places the defendant at the immediate scene at the time the offense occurred. The only evidence in contradiction thereof is that of the defendant who himself does not deny being at the scene at the time of the offense and whose conduct was obviously not found by the jury to be that of an innocent individual.

"It is only when there is a total failure of competent proof in a criminal case to support a material allegation in the information, or where the testimony adduced is of so weak or doubtful a character that a conviction based thereon could not be sustained, that the trial court will be justified in directing a verdict of not guilty." Sherrick v. State, 157 Neb. 623, 61 N. W. 2d 358. "This court, in a criminal action, will not interfere with a verdict of guilty based upon conflicting evidence unless it is so lacking in probative force that we can say, as a matter of law, that it is insufficient to

support a finding of guilt beyond a reasonable doubt." Texter v. State, 170 Neb. 426, 102 N. W. 2d 655.

Defendant also assigns as error the giving of instruction No. 6 of the trial court. That instruction sets out the words of the statute with reference to one who "aids, abets or procures" another to commit an offense; defines the word "accomplice"; and defines the word "abettor" as follows: "An 'abettor' is one who is actually or constructively present at the commission of the deed and contributes to it by moral or physical force." The instruction concludes with the following paragraph: "You are further instructed that aiding and abetting involves some participation in the criminal act and must be evidenced by some word, act or deed. No particular acts are necessary; nor is it necessary that any physical part in the commission of the crime is taken or that there was any express agreement therefor." It is well established that the use of physical force is not required to constitute one an aider and abettor. The statute itself states that it is sufficient if one "procures" another to commit an offense. § 28-201, R. R. S. 1943. "One who incites or instigates the commission of a felony when he is neither actually nor constructively present is an aider, abettor or procurer within the meaning of section 8579, Rev. St. 1913." Neal v. State, 104 Neb. 56, 175 N. W. 669.

Another assignment of error is that the sentence of not less than 2 nor more than 4 years in the Nebraska Penal and Correctional Complex is excessive. "Where the punishment of an offense created by statute is left to the discretion of a court, to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed unless there appears to be an abuse of such discretion." Salyers v. State, 159 Neb. 235, 66 N. W. 2d 576. See, also, Hyslop v. State, 159 Neb. 802, 68 N. W. 2d 698. No abuse of discretion appears here.

In argument, defendant intimated that defendant's

civil rights had been prejudiced by his examination at the police station following the arrest. No assignment of error was made in this regard and ordinarily matters considered by the court are confined to those so assigned. However, in this instance, an examination of the record does not disclose that any prejudicial admissions obtained from the defendant, if any were, were introduced at his trial.

The judgment of the district court is correct and it is affirmed.

AFFIRMED.